ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Gilbane Building Company | )   ASBCA No. 57206 |
| | ) |
| Under Contract No. W9126G-07-C-0043 | ) |

APPEARANCE FOR THE APPELLANT:      Paul H. Sanderford, Esq.
                                          Sanderford & Carroll, P.C.
                                          Temple, TX

APPEARANCES FOR THE GOVERNMENT:    Thomas H. Gourlay, Jr., Esq.
                                            Engineer Chief Trial Attorney
                                          Lloyd R. Crosswhite, Esq.
                                          District Counsel
                                          Kendra M. Laffe, Esq.
                                            Dawn-Carole Harris, Esq.
                                          Engineer Trial Attorneys
                                          U.S. Army Engineer District, Ft. Worth

## OPINION BY ADMINISTRATIVE JUDGE JAMES
## ON APPELLANT'S MOTION FOR RECONSIDERATION

The Board's 13 August 2014 decision denied the captioned appeal. *Gilbane Building Company*, ASBCA No. 57206, 14-1 BCA ¶ 35,701. On 18 August 2014 appellant received that decision and on 17 September 2014 timely moved for reconsideration. On 17 October 2014 respondent replied to the motion.

Appellant seeks reconsideration on two grounds: (1) The Board "misconstrued PKD, Inc.'s ostensible statement that it was not regularly engaged as a manufacturer of elevator systems," which, according to appellant, "can only be treated as an admission...if 'assemblers of elevator components into an elevator system' do not qualify as...manufacturer[s]," which "is the central question of the appeal" a question "which the Board declined to address" and (2) "The Board's decision stated that PKD's past performance included only one qualifying project in the 10 years preceding the Project," but PKD's past performance list "identified up to four (4) major elevator system replacement projects completed within the previous 10 years" (app. mot. at 1).

Ground (1). Gilbane argues that respondent's definition of a "manufacturer regularly engaged in the manufacture of elevator systems" is that the "design intent and intent of the specifications was to have a <u>complete elevator system by one</u>

manufacturer regularly engaged in the manufacture of elevator systems" (app. mot. at 2, ¶¶ 4-5). Thus, "[h]eld to [this Government] definition, the record reflects PKD's agreement that it was not a 'manufacturer regularly engaged in the manufacture of elevator systems.'" But "[s]uch statements by PKD…do not amount to an admission…that it is not regularly engaged in the manufacture of elevator systems" because "the proper legal definition of 'manufacturer'…should be given the same treatment as courts and boards have given the term used in the Standard Products Clause and the Buy American Act…that assemblers of constituent parts into a final product or system are manufacturers." (*Id.* at 2-3, ¶ 7)

Appellant's foregoing premise – in order to decide whether the government properly disapproved PKD's elevator submittals, one must decide whether a component assembler was a "manufacturer" – is unsound, a non-sequitur. Assuming *arguendo*, without deciding, that an assembler is a manufacturer, if PKD was not regularly engaged in assembling or manufacturing elevators, those submittal rejections were proper because PKD was not regularly engaged in the manufacture or assembly of pre-engineered elevator systems within specification § 14 21 23, ¶ 1.3. As stated at the conclusion of our decision: "Since PKD has not established that it was regularly engaged in manufacturing elevators, we need not analyze the terms 'manufacturer' and 'pre-engineered.'" 14-1 BCA ¶ 35,701 at 174,823.

Ground (2). Based on the Board's review of Gilbane's 11-page list of PKD elevator contracts performed, we stated:

> Gilbane forwarded PKD's list of contracts completed from October 1986 to February 2008, including several for elevator repairs, upgrading and modernization; three elevator installation contracts performed in 1991, 1994 and 1997 and a Navy contract for replacement of existing elevators completed in April 1999, about a decade before Gilbane's transmittals were submitted under this BHT contract.

14-1 BCA ¶ 35,701 at 174,822, finding 20.

Gilbane's motion asserts that PKD's list of elevator contracts completed after 16 October 1998 included four "fully completed elevator replacement projects" (app. mot. at 4-5, ¶ 13). We summarize PKD's descriptions of those four projects from its list appended to Gilbane's 19 March 2009 transmittal (R4, tab 14 at 13-17):

• Bexar County, Contract No. BC-05-554, completed in April 2007, PKD described as: "ELEVATOR REPLACEMENTS: 10 new ECC AC solid-state

2

controls, Machines, motors, elec. service, HVAC, stairs & handrails, cabs, doors, Operating fixtures, wiring, etc."

• U.S. Penitentiary, Leavenworth, Contract No. J40804C-025, completed in February 2004, PKD described as: "ELEVATOR UPGRADES: Complete replacement of two hydraulic freight Elevator with new MCE solid-state controls, pumps, jacks, cabs, etc.; re[p]lacement of one...elevator with all new equipment including machinery, cab, MCE solid-state controls...."

• Naval Hospital, Agana, Guam, Contract No. N62766-96[-]C-2618, completed on 16 April 1999, PKD described as: "Replace Elevators...6 Geared Elevators...complete tear-out of old & install new."

• Camp Lejeune, Contract No. N62470-96-C-4470, completed 30 April 1999, PKD described as: "Repair/Dismantle/Replace Elevators...6 Hydraulic Pass. Elevators w/MCE solid-state controls/2-3 stories – removed old traction elevators, converted shafts for new hydraulic units...."

We have again reviewed the experience documentation PKD submitted. That review reinforces our conclusion that the record is wholly insufficient to establish that the subcontractor was "regularly engaged" in manufacturing elevators, much less "pre-engineered elevator systems." The precise scope, complexity and requirements of the four projects emphasized by appellant on reconsideration are unclear. All of those projects included "replacement" of elevators in an existing building. Only one of the replacement projects emphasized by appellant was performed within the five years preceding PKD's submittals.[1] Plainly, its recent experience fails to establish that PKD was "regularly engaged" even in "replacement" projects. In addition, assuming *arguendo* that the four projects that included "replacement" within the ten year period before its submittal somehow qualify appellant as a "regularly engaged" manufacturer/assembler generally, the evidence of record fails to establish that they involved complete "pre-engineered systems." On reconsideration we again conclude that PKD's submittal was properly rejected.

---

[1] Our decision in this appeal used a ten year period for assessing whether appellant was a "regularly engaged" manufacturer. The sole purpose of using such an extensive experience period was to reflect that the most recent federal government project that might arguably be considered comparable and relevant was completed approximately one decade before appellant's transmittal in dispute. The salient point is that regardless of whether a five or ten year period is utilized for evaluating appellant's experience, it was not "regularly engaged."

# CONCLUSION

For the foregoing reasons, we deny appellant's motion for reconsideration.

Dated: 3 February 2015

DAVID W. JAMES, JR.
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

ROBERT T. PEACOCK
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 57206, Appeal of Gilbane Building Company, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

4